CHARLES REDMAN, BY HIS NEXT FRIEND, v. NORFOLK AND
WESTERN RAILWAY COMPANY.

(Filed 7 April, 1909.)

1. Railroads—Master and Servant—Warnings—Negligence—Proximate Cause.

A railroad company is responsible in damages for the failure of its engineer to give forewarning of a sudden, unexpected and unusual movement of its train, consisting of an engine and flat cars equipped for ditching, when the proximate cause of an injury to an employee thereon while engaged in the course of his duties.

2. Railroads—Master and Servant—Signals—Warnings—Negligence.

When an employee on a ditching train is injured while sitting on a flat car, where he should have been, in the discharge of his duties, and it is shown that, while actually engaged, his position should be standing, but, at the time, from the nature of his employment, it was not then required, the mere fact of his sitting at the time of the injury, when he was in position to promptly discharge his duty when called upon, as required, does not relieve the defendant of the duty to signal or give warning of an unusual and unexpected jolting of the train, caused by the sudden moving of the engine.

3. Same—Contributory Negligence.

When an employee on a ditching train, at a place where he should have been, in the discharge of his duties, is suddenly and unexpectedly thrown, by the negligent act of the engineer of the employer, upon a piece of machinery known by him to be dangerous, the fact that he threw his hand forward and got it caught in the machinery, to his injury, is not contributory negligence, when the act was done to save further injury.

**4. Railroads—Master and Servant—Place to Work—Duty to Employee—Contributory Negligence.**

It is the duty of the employee to select such place to work as will be the least dangerous, when the circumstances admit of a choice; and when the evidence is sufficient, it is correct for the trial judge to charge the jury that if plaintiff selected a dangerous place to perform his duties, when there were other places or positions that were available and safe, and that a man of ordinary prudence would have selected a different place than that occupied by plaintiff at the time of the injury, and the plaintiff's failure to do so was the proximate cause, the plaintiff would be guilty of contributory negligence and his recovery barred.

ACTION tried before *Jones, J.,* and a jury, at November Term, 1908, of PERSON.

Plaintiff sues for personal injuries, alleged to have been sustained by defendant's negligence. The plaintiff testified that at the time he sustained the injury he was employed by defendant on one of its trains, engaged in cleaning out ditches with a ditching machine, to which a dipper was attached. He said it was his duty to hook the chain on the dipping machine. The machine sat on a flat car. It is run by a hoisting engine, which sets on the car next to the locomotive, which runs behind the cars on which the dipper and the hoisting machine set. The dipper sets on the foremost car from the locomotive and the hoisting engine on the one next to the locomotive. A cable runs from the hoisting engine to the dipping machine. The overseer gives the signal, and the dipper is let down into the ditch. It is worked by cables. The dipper takes up the dirt and places it on the flat car in front. His duty was to hook up the machine, and the hoister runs the machine back towards the locomotive, so as to make room for the next pile of dirt. He was two or three cars from the hoisting engine at the time he was hurt. When dipping dirt he hooked up the machine every two or three minutes. He was required to be at the hooking chain. When the signal was given he unhooked the chain. The locomotive stopped while the machine was being hooked. The train would move while the dipper was being filled. He could not tell when the engine moved, except by the whistle or the bell ringing. The

cable on the hoisting machine and dipper would begin to move after the dipper had filled and was ready to unload on the car. He was sitting on the side of the flat car, waiting for the signal to be given to hook up the chain and snatch-block. The dipper was coming up from the ditch with dirt. No signal was given to fix the chain. The locomotive moved forward and threw him over, and he caught at something, and caught the chain, which drew his hand into the snatch-block and injured him. No signal was given him that the train was going to move. It was a sudden movement of the car; he was not looking for it; it was a harder movement than any he had experienced since he went to work. The custom had been to work the hoisting machine only when the cars were not moving. If he had not thrown his hand on the chain his head would have gone on it. At the time he was injured he was sitting down. He did his work while standing up; he could not perform his duty sitting down. Was sitting where he could get up and perform his duty on signal. He was sitting on the side of the car. No one told him to sit there. His feet were hanging down. When the dipper got on the car it was his duty to hook it up, but it was not necessary at this time to hook it up. He was waiting for them to give him the signal; had his back to the chain, which caught his hand. The cable was running; he knew it was running. He knew if he put his hand in it he would be hurt.

The evidence on the part of defendant tended to show that plaintiff should not have been sitting down at the time of the injury; that his duty required him to stand up, and that the men in charge of the locomotive did not know that he was sitting. The defendant's witnesses also denied that the engine moved when plaintiff was injured.

Plaintiff, being recalled, said that he was sitting so that he could get up, turn and attend to his business; that if he had been sitting three feet further away, which he could have done, he would not have been hurt; sat at the place of his own accord.

At the conclusion of the evidence defendant moved for judgment of nonsuit, which was denied. Defendant excepted. The usual issues, directed to defendant's negligence and plaintiff's contributory negligence, were submitted to the jury. Defendant

submitted a number of prayers for special instructions, several of which directed the jury to return a verdict for defendant; others presented questions of law applicable to certain phases of the evidence. His Honor declined to give them as drawn, and defendant excepted. The instructions given, to which exceptions were taken, are set out in the opinion. There was a verdict for the plaintiff upon both issues and his damages assessed on the third issue. Motion for new trial denied. Defendant excepted. Judgment upon the verdict. Appeal.

*L. M. Carlton* for plaintiff.
*Guthrie & Guthrie* for defendant.

CONNOR, J., after stating the case: The negligence alleged and found by the jury was in moving the train suddenly and without giving the usual signals. The plaintiff says that when the dipper was filled, ready to be unloaded—that is, drawn over the car and deposit the mud upon it—the train did not move; that it was in motion when the dipper was filling with mud from the ditch on the roadside; that he was sitting on the side of the car, waiting for the signal to hook the chain, which would have required him to stand up. The sudden motion of the train, without signal or warning, caused him to throw his hand back, and it was thereby thrust or thrown into the snatch-block and injured. His Honor instructed the jury, in this aspect of the testimony, that if they found that plaintiff's post of duty was on the car where the snatch-block or hoisting chain was suspended; that by the rules of the company, or by custom, a signal should be given before the train moved, and that plaintiff was on the car, where his duty required him to be, waiting for the dipper to come over and on the car, to be hooked by him, and that the engineer, without notice or signal, negligently caused the train to move or jerk at a time when it was not necessary to do so, and because of the sudden movement of the train plaintiff was jarred and about to fall and lose his balance, and threw out his hand to catch, and his hand came in contact with the chain or snatch-block and was injured, and the sudden negligent moving of the train was the proximate cause of the injury, they should answer the first issue "Yes." To this instruction defend-

ant excepted. In the light of the conflicting evidence, the question of the alleged sudden moving of the train, as testified to by plaintiff, was properly submitted to the jury. If, as alleged by him, the movement was unusual and not when the position of the dipper was such as to make it necessary and proper, certainly some warning or signal should have been given, so that employees on the cars, liable to be injured, should be warned and given an opportunity to avoid injury. It is a matter of common knowledge and every-day experience that a sudden movement of a train of cars is calculated to throw persons standing on them down and subject them to serious injury. The duty to give warning of unusual and unexpected movement to employees, whose duty it is to be on the cars, is manifest. This has been too frequently and uniformly held by this Court to require the citation of authority.

Defendant insists that plaintiff cannot avail himself of this principle, because he was not at his post of duty, but had voluntarily placed himself in a position of obvious danger. It is true, as contended by defendant, that the duty imposed upon the engineer to give the signal is for the protection of the employees who are on duty and at the place assigned to them. He is not required to look out for those who, leaving the post or place assigned to them, have voluntarily or, in violation of their duty, assumed a more dangerous position. In *Howard v. Railroad,* 132 N. C., 709, the plaintiff employee, riding in a shanty car, in violation of the rules of the company and without any necessity, sat on the steps of the car, and was injured by striking his foot against a pile of wood on the side of the track. We held that he could not recover. His proper place was in the car, where seats had been provided and the rules of the company required him to be. It is elementary that it is negligence for a passenger to ride on the platform of a moving train when seats have been provided and there is room for him to be seated inside the car. *Wagner v. Railroad,* 147 N. C., 315. In the case before us the plaintiff was required to stand up only when he was hooking the chain. We see nothing to justify the conclusion that while the dipper was gathering the mud and placing it upon the car he was under any obligation to stand up. If he

was at his post, to hook the chain when signaled, he performed his full duty. It was necessary for him to remain on the car, so that when he was called upon he could promptly hook the chain. This was done every two or three minutes. There is no suggestion that by sitting on the side of the car, in the manner described, he was out of the line of his duty. It is the duty of a conductor on a passenger train to pass through the cars, to take up the tickets and look after his train; but it would not be contended that if, while "on his run," he sat down and was injured by the negligent management of the engine by the engineer, he could not recover because he was not "standing up" or passing through the cars. He is none the less on duty when sitting down than when passing through his cars. So with the plaintiff; his place was on the car, near to the chain and snatch-block. If he negligently sat so near the edge of the car that by the usual movement of the train he fell off, his negligence would be the proximate cause of the injury, and he could not recover for an injury sustained thereby. This view of the case was put before the jury by his Honor, who told them that if he was sitting down, as he testified, and by the motion of the ditching machine he was jarred, and threw his hand onto the snatch-block and was thereby injured, he could not recover. This was obviously correct, because the motion of the ditching machine, when properly operated, was one of the risks which plaintiff assumed when he took the employment. But the sudden, unusual and unnecessary movement of the train, without signal, was negligent, and the employee never assumes the risk of an injury sustained by defendant's negligence. It may well be that the engineer did not know that the plaintiff was sitting down near the snatch-block, or that by suddenly, and without warning, moving the train he would cause him to sustain the injury. This is not the test of liability for negligent conduct. He did know that employees were on the flat cars, operating the ditching machine; that while the dipper was being drawn onto the car for the purpose of placing the dirt or mud, the engine should not move, certainly not do so without giving warning. He further knew that it was hazardous to men at work on the cars to suddenly, and without warning, move the train; to do so

was negligence, and his employer, the defendant, is liable for such injury as was the proximate result of such negligence. Human life and limb is of too much value, in the estimation of the law, to permit it to be sacrificed or destroyed by negligent handling of such powerful agencies without warning and signals to those to whom the common employer owes the duty of giving warning. The defendant's witnesses deny that the train was moved, but the issue has been settled against them by the verdict. We find no error in his Honor's charge upon the first issue.

The defendant contends that, as a matter of law, upon his own evidence, plaintiff was guilty of contributory negligence. The learned counsel stresses upon our attention plaintiff's statement that the engine started the car and he threw his hand back and struck the chain; that he knew the cable was running; that he knew if he put his hand in it he would be hurt. Of course, if plaintiff had put his hand in the snatch-block or on the cable, knowing the danger, his negligent act would have been the proximate cause of his injury, and he could not recover. This is manifest. He says that, as the train moved suddenly, he lost his balance and threw his hand back and struck the chain; that if he had not done this he would have fallen and his head would have struck it.

His Honor submitted the testimony upon the second issue, under the following instructions. After explaining to them the duty of the employee to select a safe place in which to perform his work, when two are open to him, he said: "If you should find the facts in this case to be that the plaintiff selected a dangerous place in which to wait until the dipper should be placed on the car and by him unhooked, in accordance with his duty, when there were other places or positions on the cars that were safe, and you further find that a man of ordinary prudence would not have selected a position such as that occupied by the plaintiff at the time of the injury, then and under these circumstances, if you find such was the condition and facts, the plaintiff would be guilty of contributory negligence, and you should answer the second issue 'Yes.'" This was correct.

We notice an exception to the following language used by

his Honor: "The plaintiff alleges that he was injured by the defendant moving its train of cars without giving him notice or signal by ringing the bell or blowing the whistle, which it was its duty to do." In their brief the learned counsel assume that in using this language his Honor instructed the jury that it was the duty of defendant to give plaintiff signal by ringing the bell or blowing the whistle. We do not so interpret his Honor. He was stating the plaintiff's contentions. When he came to instruct the jury he explained to them that the duty to give a signal was dependent upon the rules of the company or the custom. We have carefully examined the record and the briefs of counsel, and find no error. There were no exceptions to the instruction upon the measure of damages.

No Error.